CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2006 FEB 27 PM 1:35
GREGORY C. LANGHAM
CLERK
BY ________ DEP. CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 06 CV 00280 WDM_PAC

MANASFI, WASIM G

Plaintiff,

v.

MALONE, JOHN, and
BENNETT, ROBERT, and
HOWARD, GARY, and
VOGEL, CARL, and
CARROLL, KENNETH

Defendants.

MANASFI V MALONE ET AL

This case is brought in regard to

1) The delay by the named individual defendants, for violating applicable insider trading laws, and the delay till Feb 21, 2001 of notifying Liberty Satellite and Technology (LSAT) common shareholders, of failure to list the Liberty Satellite and Technology (LSAT) Class B and consequently Class A stock (Which

was eligible for listing for over 90 days) to the NASDAQ National Market in violation of applicable insider trading laws and in particular SEC Regulation Fair Disclosure (FD)

**SECURITIES AND EXCHANGE COMMISSION**

17 CFR Parts 240, 243, and 249

Release Nos. 33-7881, 34-43154, IC-24599, File No. S7-31-99

RIN 3235-AH82 Selective Disclosure and Insider Trading

Which must have been followed due to the rise of insider trading liability from an insider trade of Liberty Satellite and Technology (LSAT) stock by Liberty Media Chairman Dr. John Malone, who is the boss of LSAT Chairman, Mr. Gary Howard, and LSAT Chief Operating Officer Mr. Carl Vogel, on behalf of myself and all other LSAT common shareholders of record at the time of LSAT sale. I learned of the existence and applicability of these laws in December 2005.

Dr. John Malone's abrupt and sudden trade of LSAT stock that he held for over 4 years, and less than a year after the company he is Chairman of invested $300 million is questionable since it occurred during waiting for rule by the NASDAQ on listing application by LSAT, which failed. The majority of Dr. Malone's traded shares were LSAT Class B shares that never met the

minimum NASDAQ National Market listing requirements from day one of the application. Dr. Malone's sale of the majority of his LSAT shares reflected his lack of confidence in investing in LSAT and his lack of confidence in the successful LSATA NASDAQ listing application. The actions he took due to this lack of confidence in LSAT caused a severe loss to LSAT common shareholders.

The public press release of the notification of failure and withdrawal of LSAT listing application to the NASDAQ National Market on Feb 21, 2001 was delayed too long to follow the requirements of Regulation FD sited above resulting in financial loss to LSAT common shareholder and significant ~~financial~~ gain, through insider trading, to Dr. John Malone. Dr. Malone performed "self-trading" to insure his financial gains.

2) In addition, I bring this case on my, and all LSAT shareholders of record at time of LSAT sale, behalf against the named defendants for facilitating Dr. Malone's insider trades. Dr. Malone's trade occurred after the NASDAQ notified them about failure of LSAT Class B shares to meet NASDAQ listing requirements. Through collaboration and the creation of holding companies, and the filing of incomplete, inaccurate and

inconsistent SEC filings over a two year period, as related to Dr Malone's transaction of October 27, 2000. This transaction allowed him to lock a sale value for his LSAT shares and receive the funds from the LSAT shares equity over three years later, on 28-NOV-2003. This collaboration among the named defendants, and the sharing of insider information about the LSAT NASDAQ listing application failure, allowed Dr. Malone to secure a price of $73 per share for his LSAT holding, which he received on 28-NOV-2003. Meanwhile, LSAT common shareholders received $2.86 per share in the buyout of their LSAT shares two months earlier.

I bring this case on behalf of myself, and all shareholders of Liberty Satellite and Technology of record, requesting the court to order the proper compensation for the equity lost by LSAT shareholders during the application listing to the NASDAQ National Market and the February 21, 2001 announcement of the NASDAQ listing application failure and withdrawal period. I seek additional punitive damages, for all shareholders, from the named defendants due to their violation of SEC insider trading, and reporting laws, and the diversity of all proceeds from this case among all LSAT shareholders of record.

Page 4.

In Sep 2003, Liberty Satellite and Technology announced that while pending it's acquisition by Liberty Media, its books were open for review by shareholders. As a shareholder at the time, I requested, in writing to the LSAT official contact person, access to Liberty Satellite and Technology's (LSAT) correspondence with the NASDAQ regarding the NASDAQ National Market Listing application. I was directed by the LSAT official contact person, in writing, to contact the NASDAQ to obtain such information (**Exhibit 1**).

I request the court subpoena from the NASDAQ the core evidence for this case in terms of all communications, written, telephonic and electronic (email and fax) regarding Liberty Satellite and Technology's listing application to NASDAQ National Market. The NASDAQ did not release this information to me, and requested that I subpoena the detail correspondence between NASDAQ and Liberty Satellite and Technology in regard to the LSAT NASDAQ National Market listing application.

**Liberty Satellite and Technology Background and Sequence of Events**

Prior to August 15, 2000, Liberty Satellite and Technology (LSAT) was known as TCI Satellite and Entertainment (TSAT). TSAT was publicly traded on the NASDAQ National Market under two stock Classes, A and B. TSAT was owned by public shareholders and a consortium of cable companies, among them, TCI Cable, the cable giant headed by Dr. John Malone at the time.

TCI Satellite and Entertainment (TSAT) did business with the public under the brand name PrimeStar and listed two classes of common shares for trading to the NASDAQ National Market, Class A (TSATA) and Class B (TSATB). Each Class B held the same economical interest as Class B share, but 10 times the votes of Class A shares. Dr. John Malone was Chairman of TCI Cable and owned over 4 million Class A and Class B shares of TSAT personally and directly.

TCI Cable was sold to ATT, and spun media entities into a separate company called Liberty Media. Dr. John Malone was then employed as Chairman of Liberty Media and retained his position as Chairman of TCI Satellite and Entertainment (TSAT).

Page 6.

In 1999 Hughes Corporation purchased TCI Satellite and Entertainment (TSAT) assets; customers, satellites and satellite slots. TCI Satellite became 100% owned by common shareholder of Class A and Class B shares, with market cap of approximately $70 million in Hughes shares, over $390 in Net Operating Losses, and no debt.

Dr. John Malone was Chairman of TCI Satellite and Entertainment (TSAT), and its single largest shareholder, with approximately 23% of the voting power primarily as TCI Satellite Class B shares. Dr. Malone's net assets in TCI Satellite were worth under $4 million. Dr. Malone's shares were held directly by him (SEC filing TSAT 1999 10K under the name TCI Satellite). Dr. Malone was also Chairman of Liberty Media. *(see LSAT (previously TCI Satellite 1999 10-K page III-10) with following link http://www.sec.gov/Archives/edgar/data/1022222/0000912057-00-015643-index.html* ).

In 1999, TCI Satellite and Entertainment (TSAT) asked the NASDAQ to move its stock listing from NASDAQ National Market to the NASDAQ OTC.

In March 16 2000, Liberty Media Corporation, whose Chairman was Dr. John Malone, acquired controlling interest in TCI Satellite and Entertainment (TSAT), which also had Dr. John Malone as Chairman.

Also in March 16, 2000, Dr. John Malone Chairman of Liberty Media Stepped down as TCI Satellite and Entertainment (TSAT) Chairman and appointed two executives who worked for him at Liberty Media to TSAT management. Mr. Gary Howard, Chief Operating Officer of Liberty Media, took on the additional position of Chairman of TSAT. Mr. Carl Vogel, a Senior Vice President at Liberty Media, took on the additional role of TSAT Chief Executive Officer. Mr. Howard and Mr. Vogel continued to work for Liberty Media and report to Dr. John Malone per their positions with Liberty Media.

On August 11, 2000, TCI Satellite and Entertainment applied to the list its Class A and Class B shares to the NASDAQ National Market, and requested a name change from TCI Satellite and Entertainment (TSAT) to Liberty Satellite and Technology (LSAT), to reflect its association with Liberty Media Corporation.

(**Exhibit 2**)

On August 15, 2000, at the Liberty Satellite and Technology (LSAT) Annual Shareholders Meeting, LSAT announced the company's application to re-list both LSAT stock classes (LSAT - A and LSAT B) from the OTC to the NASDAQ National Market. During the LSAT Annual meeting's Question and Answer Session, and in response to a question asked by Wasim Manasfi on when the shareholders should expect a decision on listing from NASDAQ, **LSATA's CEO, Mr. Carl Vogel indicated the NASDAQ had informed them that a ruling on the LSAT listing to the NASDAQ National market should be expected within 45 days.**

**Problems with Listing LSAT Stock to NASDAQ National Market**

Listing a stock on the NASDAQ Nation Market is a privilege afforded only to select companies that meet NASDAQ's stringent listing requirements and financial reporting controls. The world's largest corporations are listed to the NASDAQ National Market. Stock Analysts and fund managers will not trade or cover, in general, stocks that are not listed to the NASDAQ National Market. LSAT sought to join those prestigious corporations, and attract investors through joining the NASDAQ National Markets. Failure of listing to the NASDAQ reduces

investor interest, and is coupled by a price drop. LSAT common shareholders financial gains depended on LSAT's success in listing to the NASDAQ National Market. Failure meant financial losses.

Liberty Satellite and Technology applied to list both Class A and Class B stock to the NASDAQ National Market. **LSAT class A met the NASDAQ National Market listing requirements for over 90 days after the August 11, 2000 listing application date.** However the LSAT - Class A stock was never listed to the NASDAQ national market for reasons that were never revealed by LSAT management. There is no reason why LSAT Class A stock would not have been listed, except for its association to Class B stock which did not meet the minimum NASDAQ National Market Listing requirements.

LSAT Class B did not meet the minimum NASAQ National Market listing requirement from day one of the NASDAQ listing application, as LSAT shareholders discovered from the LSAT press release of February 21, 2001.

On February 21, 2001, Liberty Satellite and Technology issued a Press Release announcing the withdrawal of the LSAT listing

application to the NASDAQ National Market **(Exhibit 3)**. LSAT's February 21, 2001 Press Release gave two reasons for the withdrawal; One reason for failure of the LSAT listing to the NASDAQ was cited in the February 21, 2001 Press Release is LSAT B shares were held by less than 300 round-lot holders **(Exhibit 3)**. The requirement for initially listing a stock to the NASDAQ National Market is it must be held by more than 300 round-lot holders. A review of LSAT (TSAT at the time) 1999 10 K Page II-1 shows less than 300 round-lot holders for LSAT Class B shares as far back as 1999. *(see link below to LSAT 1999 10K )* *http://www.sec.gov/Archives/edgar/data/1022222/0000912057-00-015643-index.html*

The second reason for the withdrawal of the LSAT NASDAQ listing application, which was cited in the February 21, 2001 Press Release, was the drop in price of the LSAT Class A shares to below the required $5.00. LSAT Class A was fully eligible, and met all NASDAQ National Market listing requirements, for over 90 days, ample time for NASDAQ to approve the listing. LSAT Class A shares were above $5.00 for over 90 days. The LSAT Class A share price lost over 50 percent of it's value within 8 trading days after Dr. John Malone's 6-Novomber-2000 SEC filing of his 27-October-2000 liquidation of his LSAT holdings. LSAT common

shareholders lost over $250 million in equity during these 8 days.

The result of the subpoena of the NASDAQ correspondence with LSAT in regard to the LSAT NASDAQ National Market stock listing application will reveal the real reason for the failure of the listing.

During the 6 months of waiting on the results of the LSAT NASDAQ National Market listing application, my friends at our investment club made several phone calls to the LSAT Investor Relations, inquiring about the delay to the NASDAQ listing. We were told that it was in process, and no details were available to the public.

Abruptly, and while LSAT shareholders were waiting on the ruling from the NASDAQ on the LSAT Class A and Class B Shares listing application to the NASDAQ National Market, Dr. John Malone, Chairman of LSAT largest shareholder, Liberty Media, filed with the SEC on November 6, 2000 for a change in his LSAT holdings effective October 27, 2000. Dr. Malone's filing on October 27, 2000 contained a footnote, where he stated that his wholly owned TP Investments had **contributed** his privately held LSAT A and

LSAT B shares to Liberty TP Management LLC. This contribution was described as tax free. Dr. Malone held 23% of the publicly traded LSAT Class B shares which did not meet the NASDAQ National Market listing requirements.

Dr. John Malone's filing of October 27, 2000 was **incomplete** and **inaccurate**, as we will present in detail in this case.

On December 1, 2003, Dr. John Malone filed with the SEC, Form 4, for the sale of TP Investments to Liberty Media, effective November 28,2003. Through this sale, Dr. Malone effectively received the funds from the equity of LSAT A and LSAT B shares from the October 27, 2000 transaction.

On October 12, 2001, Liberty Media proposed to acquire all of outstanding shares of Liberty Satellite and Technology (LSAT) it did not already own.

In December 2001, Liberty Media withdrew the proposal to acquire LSAT.

April 2002. LSAT and Liberty Media entered into the LSAT LLC and Ascent Entertainment Transaction of April 2002 along with the Tax Liability Allocation and Indemnification Agreement.

April 1, 2003 Liberty Media offered to purchase remaining assets of LSAT.

November 12, 2003: Liberty Media completed the acquisition of LSAT. LSAT common shareholders are paid $2.86 cents per LSAT share.

Dr John Malone declared the sale of his wholly owned TP Investment to Liberty Media on November, 28, 2003, through the filing of SEC Form 4 for $60.7 million.

**Details of the case**

In the details of this case, I will present compelling reasons to prompt the Court to subpoena from the NASDAQ all correspondence with LSAT and Liberty Media in regard to LSAT Class A and Class B application for listing to the NASDAQ National Market.

I ask the court to subpoena, for the core basic evidence for this case, the NASDAQ for all communications, including telephonic, electronic (email and faxed) and written between the NASDAQ and Liberty Satellite and Technology and Liberty Media in regard to the LSAT NASDAQ National Market listing application.

The requirement of having more than 300 round-lot holders is #5 on the list of 10 item check list in the NASDAQ listing Application (see PDF file for complete NASDAQ listing requirements on NASDAQ web site under following link **http://www.nasdaq.com/about/FAQsInitial.stm#1** ), and would have been addressed within the 45 day estimated period stated by LSAT CEO Mr. Carl Vogel at the LSAT Annual Shareholders meeting. It is very likely the NASDAQ notified LSAT Management of this issue within the 45 days.

Per the fact that Mr. Gary Howard, Chairman of Liberty Satellite and Technology (LSAT), was also the Chief Operating Officer of Liberty Media, and was responsible for the daily operation of Liberty Media, and reported to Dr. John Malone, Chairman of Liberty Media, and that Mr. Carl Vogel was LSAT CEO and reported to Dr. John Malone as Vice President of Liberty Media, any major communication from the NASDAQ regarding the listing Class B of

subsidiary LSAT would have been reported to Dr. John Malone and Mr. Robert Bennett, per the nature of their duties, thereby giving all the defendants access to insider information.

Such insider information regarding problems listing LSAT Class B shares to the NASDAQ national Market could have been the motive for the **abrupt formation of TP Investment LLC** by Dr. Malone on October 24, 2000, and for the **October 27, 2000 sale of the majority of his holdings in LSAT**, which constituted over 3.5 million shares of LSAT Class B shares that the NASDAQ would not have approved for listing to the NASDAQ National Market.

Dr. John Malone's transaction of October 27, 2000, motivated by any insider information about communication from the NASDAQ regarding the LSAT Class B shares not meeting listing requirement, violated insider trading laws and would have required public disclosure by the named defendant in accordance with SECURITIES AND EXCHANGE COMMISSION

17 CFR Parts 240, 243, and 249

Release Nos. 33-7881, 34-43154, IC-24599, File No. S7-31-99

RIN 3235-AH82 Selective Disclosure and Insider Trading, which was violated with the delay of the disclosure.

In September 2003, Liberty Satellite and Technology announced that its books were open for review to its shareholders, prior to its acquisition by Liberty Media. As a shareholder at the time, I affirmed my right to review these documents and requested, in writing to LSAT official PR/communication person, for access to Liberty Satellite and Technology's (LSAT) correspondence with NASDAQ regarding the NASDAQ Listing. I was directed by the LSAT PR person, in writing, to contact the NASDAQ to obtain such information (**Exhibit 1**).

I request the subpoena of NASDAQ correspondence with LSAT in regards to the LSAT NASDAQ Listing Application, since the NASDAQ requested that I obtain a court order for the release of the detail correspondence between NASDAQ and LSAT in regards to the LSAT NASDAQ National Market application.

Upon review of the subpoenaed material evidence of the NASDAQ correspondence with Liberty Satellite and Technology regarding their application to list Liberty Satellite and Technology class A and Class B stock to the National Market, we will determine if any insider trading has taken place. If it is determined that any insider trading occurred, we seek the court order to diversify all such gains by the company officer(s) among the common shareholders of Liberty Satellite and Technology on record.

**Dr. John Malone Trade of LSAT Class A and Class B**

I am seeking, on behalf of myself and all Liberty Satellite and Technology shareholders on record at the time of the sale of LSAT, the diversification of the $23 million, plus all accumulated interest of the $60.7 million, which was received by

Dr. John Malone from the sale of TP Investment to Liberty Media on November 28, 2003. I also request the court order for compensatory and punitive damages for all shareholders from the named defendants.

I contend that the SEC filings regarding this trade by Dr. John Malone were incomplete, inaccurate, and largely inconsistent with the SEC filing by Liberty Media in regards to this trade. The details of the trade were filed with the SEC over a period of two years.

I contend that Dr. Malone's actual sale of the LSAT A and LSAT B shares occurred at the time of Dr. Malone's receipt of the $60.7 million payment on November 28, 2003. The transaction of October 27, 2000 established a contract securing liquidation value for the LSAT A and LSAT B shares. This transaction allowed Dr. Malone to profit from any LSAT shares price appreciation. Dr. John Malone held direct economic interest, and collected 9% interest on the LSAT A and LSAT B shares involved in the October 27, 2000 transaction. The 9% interest that Dr. Malone's TP Investment was entitled to was never mentioned in the October 27, 2000 SEC filing.

The SEC filings of the detail of Dr. John Malone trades were only sporadically revealed in the next two years in Liberty Media SEC filings.

## History of Dr. Malone's LSAT Holdings

Here, I present to the court, the history of Dr. John Malone's LSAT holdings and the October 27, 2000 transaction. This transaction was concluded and paid for on November 28, 2003. (see link below: http://sec.gov/Archives/edgar/data/937797/000110465903027618/xslF345X02/a4.xml )

**(Exhibit 4)**

1 - In 1999 Dr. Malone was Chairman of Liberty Media and at the same time Chairman of Liberty Satellite and Technology (LSAT) (Previous name was "TCI Satellite and Technology", TSAT). Per the company 10k filing for year 1999, Dr. Malone was the company's largest single shareholder. Dr. Malone owned Liberty Satellite and Technology (at the time, "TCI Satellite and Technology") shares directly in his name.

We quote, from LSAT (Named TSAT at the time) 10K for 1999,

**Page III -10, Dr. Malone is listed as holder of LSAT**

*John C. Malone,*

| *Chairman of the Board* | | | | |
|---|---|---|---|---|
| *5619 DTC Parkway* | *Series A* | *909,845(3)* | *1.4%* | *23.9%* |
| *Englewood, Colorado* | *Series B* | *3,439,958(4)* | *40.6%* | |

2 - In **March 2000** Liberty Media, whose Chairman is Dr. John Malone, acquired a majority interest in "Liberty Satellite and Technology" (LSAT) (Then TCI Satellite and Entertainment -TSAT).

On March 16, 2000, Dr. John Malone, Chairman of both Liberty Media and Liberty Satellite and Technology (LSAT), resigned as Chairman of Liberty Satellite and Technology (Then TSAT) and appointed two Liberty Media vice presidents to LSAT senior positions. Mr. Gary Howard, Liberty Media Chief Operating Officer, took on the additional position of LSAT Chairman. Mr. Carl Vogel, a Liberty Media Senior Vice President took on the position of LSAT CEO. Both Mr. Howard and Mr. Vogel continued the dual role of being Liberty Media employees, reporting to Dr Malone, and executives of LSAT.

3 a - On **August 11, 2000**, LSAT requested a name change, from TCI Satellite and Entertainment (TSAT) to Liberty Satellite and Technology (LSAT), to reflect it's affiliation with Liberty Media, and applied for listing of both its stock classes LSATA and LSATB from the NASDAQ Over-the-Counter (OTC) to the NASDAQ National market.

3 b - On **August 15, 2000** LSAT Stockholders Annual Meeting, LSAT CEO, Mr. Carl Vogel, gave stockholders an estimate of 45 days for the review and listing to of LSAT to the NASDAQ National Market.

4 - After 45 days from the date of the application to list LSAT stock to the NASDAQ National Market, I, and several members of the informal investment club I belonged to, called the LSAT PR to inquire about the listing to the NASDAQ National Market. We were informed that no news was available to the public. LSAT Class A shares met all NASDAQ National Market listing requirements for over 90 days, till Nov 20, 2000, and were eligible for listing during this period.

5 - On October 24, 2000, Dr. John Malone incorporated TP Investment LLC in Colorado.

6 - On Nov 6, 2000, Dr. John Malone filed Form 13 D with the SEC for a change in ownership in his LSAT holdings, as of October 27, 2000. A note in the filing stated that TP Investments had **contributed** LSAT shares to Liberty TP Management. The transaction is described as Tax Free and no further financial details where given.

The November 6, 2000 filing of the October 27, 2000 transaction by Dr. Malone was both **incomplete** and **inaccurate** in describing the full extent of the transaction between himself, doing business as TP Investment LLC, and Liberty TP Management.

Dr. Malone's October 27, 2000 **(Exhibit 5)** filing did not meet the minimum requirement of the SEC SCHEDULE 13D under the Securities Exchange Act of 1934 filing requirement (See Item 6 of the General Instructions for filing Schedule 13 D). The filing did not reveal the details that allowed Dr. Malone to secure a liquidation price on the equity of LSAT shares through this transaction. Nor did the filing detail the 9% interest on

the equity of this transaction, which was revealed two years later in Liberty Media 2002 10 K.

The legality of the October 27, 2000 transaction is not the focus of this case. The focus of this case is on the equity on LSAT shares sale that Dr. Malone received through the sale of TP Investment on November 28, 2003. I seek that these funds be diversified among LSAT common shareholders of record.

See requirement for filing Schedule 13 D on the SEC web site. http://sec.gov/divisions/corpfin/forms/13d.htm

We quote from the General Instructions for Filing Schedule 13 D.

***Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer***

*Describe any contracts, arrangements, understandings or relationships (legal or otherwise) among the persons named in Item 2 and between such persons and any person with respect to any securities of the issuer, including but not limited to transfer or voting of any of the securities, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees*

*of profits, division of profits or loss, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, understandings or relationships have been entered into. Include such information for any of the securities that are pledged or otherwise subject to a contingency the occurrence of which would give another person voting power or investment power over such securities except that disclosure of standard default and similar provisions contained in loan agreements need not be included.*

As one can see from review of the October 27, 2000 filing, Dr. John Malone did not give the details for Item 6 in his SEC filing, which also included 9% annual interest on equity (See Liberty Media 2002 10 K)

Details of the October 27, 2000 transaction were revealed to the public in pieces during the next two years through filings of Liberty Media Corporation, headed by Dr. John Malone.

The SEC filing of November 8, 2000 states that Liberty Media filed schedule SC13 D basically outlining the TP Investment/Dr.

CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

Malone detailing the October 27, 2000 transaction in following filing:

http://www.sec.gov/Archives/edgar/data/1082114/000095013000005861/0000950130-00-005861-0001.txt

---

We quote some parts of the filing:

Liberty states total ownership in

**<<<From Page 2>>>**

*AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON*

*11*

*3,990,251 shares of Series A* 3,322,658 shares of Series B*

*CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES [_]*

*12*

Page 26.

*PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)***

*13 Series A Common Stock: 6.1%*

*Series B Common Stock: 42.9%*

**<<< From Page 3>>>**

*The Reporting Person is Liberty Media Corporation whose principal business address is 9197 South Peoria Street, Englewood, Colorado 80112. The Reporting Person beneficially owns the Shares* ***acquired in the transaction described in Item 3 through its indirect subsidiary Liberty TP Management, Inc*** *("Liberty TP Management"). The Reporting Person succeeded to the beneficial ownership of the Shares it held prior to the transaction described in Item 3 as a result of the merger (the "Merger") of Italy Merger Corp., a wholly owned subsidiary of AT&T Corp. ("AT&T"), with and into Tele-Communications, Inc. ("TCI"). The Reporting Person beneficially owns such Shares through its subsidiaries Liberty LSAT, Inc., Liberty LSAT II, Inc. and Liberty TSAT, Inc.*

**<<< From Page 5>>>**

*Item 3. Source and Amount of Funds or Other Consideration.* **As of October 27, 2000, Liberty TP Management acquired 539,831 shares of Series A Stock and 3,322,658 shares of Series B Stock from TP Investment Inc., a Colorado corporation wholly owned by Dr. John C. Malone, in exchange for 2,390 shares of Class A Convertible Nonvoting Preferred Stock of Liberty TP Management having an estimated market value of $23.9 million. Item** *4. Purpose of Transaction. The purpose of the acquisition was to increase the Reporting Person's ownership interest in the Issuer. …..*

Shareholders had to wait for Liberty Media 2000 Annual Report 10-K, which was published on March 28, 2001, to find out more the details. Still, there was no mention of 9% interest on equity of LSAT A and LSAT B shares.

---

SEC filing - Liberty Media 10 K filed 03/28/2001

http://www.sec.gov/Archives/edgar/data/1082114/000103570401000260/d85350e10-k.txt

<<< From Page I-5 >>>

In October 2000, we restructured a portion of our ownership interests in TruePosition, ICG Communications, Sprint PCS, priceline.com and LSAT and increased our equity interest in LSAT. On October 27, 2000, in three separate transactions, (1) we sold 608,334 shares of TruePosition common stock to TP Investment, Inc., a company wholly owned by our Chairman, Dr. Malone, for $6 million in cash; (2) we and TP Investment each contributed shares of TruePosition common stock to Liberty TP LLC, a newly formed limited liability company; and (3) we and Liberty AGI, Inc., a member of Liberty Media Group that is not currently one of our subsidiaries, directly and through our respective subsidiaries, contributed a portion of our respective ownership interests in TruePosition, Sprint PCS, ICG Communications and priceline.com to Liberty TP Management, Inc., a newly formed corporation, in exchange for newly issued equity securities of Liberty TP Management. **Concurrently, TP Investment contributed shares of LSAT's Class A and Class B common stock and $47.2 million in cash to Liberty TP Management, in exchange for newly issued equity securities of Liberty TP Management.** On October 31, 2000 **Liberty ICGX, Inc., a subsidiary of Liberty AGI, and Liberty PCLN, Inc., one of our subsidiaries, each of which contributed assets to Liberty TP Management, each sold a portion of the Liberty TP Management securities it received in**

**exchange for those assets to TP Investment for an aggregate of approximately $34.92 million.** *Salomon Smith Barney Inc. delivered an opinion to us and Liberty AGI that the aggregate consideration received in these transactions by us and Liberty AGI and our respective subsidiaries was fair from a financial point of view. On January 23, 2001, BET Holdings, II, Inc. was acquired by Viacom, Inc. in exchange for shares of Class B common stock of Viacom pursuant to an Agreement and Plan of Merger among Liberty, BET Holdings II, Inc., Viacom, Robert L. Johnson and the Johnson Children's Insurance Trust and certain of their respective affiliates. As a result of the merger, we received approximately 15.2 million shares of Viacom's Class B common stock in exchange for our 35% interest in BET Holdings II, Inc.*

---

**The full details of the October 27, 2000 transaction was revealed in SEC filing by Liberty Media 10 K for 2002, filed March 31, 2003, TWO years later, giving the details about the 9% interest**

http://www.sec.gov/Archives/edgar/data/1082114/000104746903009964/a2105530z10-k.txt

<<< From Page II-69 >>>

*OTHER In October 2000, Liberty restructured its ownership interests in certain assets into Liberty TP Management, Inc. ("Liberty TP Management"), a new consolidated subsidiary.* **Liberty then sold common and preferred interests in Liberty TP Management to Liberty's Chairman in exchange for approximately 540,000 shares of LSAT Series A common stock, approximately 3.3 million shares of LSAT Series B common stock and cash consideration of approximately $88 million.** *No gain or loss was recognized due to the related party nature of such transaction.* **The preferred interest has a liquidation value of $106 million and accrues dividends at 9% per annum payable quarterly in cash.** *Subsequent to these transactions, Liberty's Chairman holds all of the outstanding common stock of TP Investment, Inc., which in turn owns (1) all of the Class B preferred stock of Liberty TP Management and (2) a 5% membership interest, representing a 50% voting interest, in Liberty TP LLC. Liberty TP LLC holds 20.6% of the common equity and 27.2% of the voting power of Liberty TP Management. Liberty indirectly holds the remaining interests in*

*Liberty TP LLC and Liberty TP Management. During the third quarter of 2002, Liberty transferred an indirect 1% beneficial ownership interest in 55.5 million shares of Sprint PCS stock and related collar agreements with an aggregate market*

**Notice the following change in the description of the Malone sale of LSAT:**

**This 10-K for 2002 is different from the SC 13 -D filed in October 27 2000, and Liberty 2000 10 K in the following:**

**Dr. John Malone SC-13 D for October 27, 2000 and Liberty 2000 10K described the transaction as occurring as a contribution of shares between TP Investment and Liberty TP Management. However, the Liberty Media 10K for 2002 reveals that Dr. Malone collected interest of 9% on equity of the transaction. Dr. Malone still held economic interest in the LSAT share price appreciation, but was secured against drop in stock price. Dr. Malone received $60.7 million from the sale on November 28, 2003.**

CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

Respectfully,

Feb 27 2006

Wasim G. Manasfi
7476 E. Arkansas, Unit 3807
Denver, CO 80231
Telephone (303) 306 0309
Email: WasimMan@yahoo.com

Page 33.

CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

**Exhibit 1**

Partial Email from my contact to Mr. John Beattie LSAT official contact person directing me to NASDAQ to obtain details of NASDAQ correspondence

Yahoo! Mail - wasimman@yahoo.com - Microsoft Internet Explorer

This message is not flagged. [ Flag Message - Mark as Unread ]

Subject: RE: LSAT mediation
Date: Mon, 8 Sep 2003 10:34:11 -0600
From: "John Beattie" <jbeattie@libertymedia.com>
To: "Wasim Manasfi" <wasimman@yahoo.com>

I would suggest you contact the NASDAQ directly. I have no information regarding this subject.

-----Original Message-----
From: Wasim Manasfi [mailto:wasimman@yahoo.com]
Sent: Sunday, September 07, 2003 9:33 PM
To: John Beattie
Subject: RE: LSAT mediation

John,

I was trying to mediate, So consider me out of it.

I read that shareholders can review company documents, is that possible? What procedure do I need to follow to request a look at SEC correspondence regarding LSAT listing to NASDAQ in 2000. I recall that SEC requested additional info, and I was curious on finding that correspondence. I work across the street from your office and can stop by your office any time during your working hours.

I would greatly appreciate it

Wasim Manasfi
303 397 8383

**Exhibit 2**

**Press Release:**

**TCI SATELLITE ENTERTAINMENT ANNOUNCES NAME CHANGE AND APPLICATION FOR LISTING ON NASDAQ NATIONAL MARKET**

**ENGLEWOOD, CO, August 15, 2000 -** TCI Satellite Entertainment, Inc. ("TSAT") (OTCB: TSATA and TSATB) announced today that it has received approval from its shareholders to change its name to Liberty Satellite & Technology, Inc. ("LSAT"). At its Annual Meeting held today, shareholders approved the name change and elected the following to LSAT's Board of Directors: Gary S. Howard, who will serve as Chairman of the Board, Alan M. Angelich, Robert R. Bennett, William H. Berkman, John W. Goddard, J. Curt Hockemeier, and Carl E. Vogel, who is also Chief Executive Officer and President of LSAT. LSAT, which is currently traded on the OTC Bulletin Board, has applied for listing on the Nasdaq National Market Tier, and is waiting for approval of such application from Nasdaq.

CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

**Exhibit 3**

LSAT (TSAT) **Press Release:**

**LIBERTY SATELLITE & TECHNOLOGY ANNOUNCES WITHDRAWAL OF APPLICATION FOR LISTING ON NASDAQ NATIONAL MARKET**

**ENGLEWOOD, CO, February 21, 2001** – Liberty Satellite & Technology, Inc. (OTCBB: LSATA, LSATB) announced today that it has withdrawn its application for inclusion in the National Market tier of the Nasdaq Stock Market. The application has been on file since August 11, 2000. The closing bid price of the Company's Series A Common Stock has been below $5.00 per share since November 20, 2000. Nasdaq requires a minimum bid price of $5.00 per share for initial inclusion in the Nasdaq National Market.

Liberty Satellite & Technology, Inc. has two series of common stock outstanding, the Series A Common Stock (LSATA) and the Series B Common Stock (LSATB). Both series are currently quoted on the OTC Bulletin Board, an electronic quotation service operated by the National Association of Securities Dealers, Inc. for securities that are not listed on Nasdaq or the New York or

CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

American stock exchanges. In addition to falling below the minimum bid price requirement for the Nasdaq National Market, **the Company's Series B Common Stock is currently held by fewer than the 300-round lot shareholders required by Nasdaq for initial listing.**

The Company noted that today's action would not preclude it from reapplying to Nasdaq, if its stock met the quantitative requirements for inclusion.

LSAT is headquartered in Englewood, Colorado. Liberty Satellite & Technology, Inc. Series A and Series B Common Stock trade on the OTC Bulletin Board under the symbols LSATA and LSATB respectively.

###

Page 2.

*Exhibit 3*

**Exhibit 4**

SEC Form 4

# FORM 4

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | January 31, 2008 |
| Estimated average burden hours per response | 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

1. Name and Address of Reporting Person*
MALONE JOHN C
(Last) (First) (Middle)
C/O LIBERTY MEDIA CORPORATION
12300 LIBERTY BLVD.
(Street)
ENGLEWOOD CO 80112
(City) (State) (Zip)

2. Issuer Name and Ticker or Trading Symbol
LIBERTY MEDIA CORP /DE/ [ L, LMC.B ]

3. Date of Earliest Transaction (Month/Day/Year)
11/28/2003

4. If Amendment, Date of Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)
X Director
X 10% Owner
Officer (give title below)
Other (specify below)

6. Individual or Joint/Group Filing (Check Applicable Line)
X Form filed by One Reporting Person
Form filed by More than One Reporting Person

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | 5. Amount of Securities Beneficially Owned | 6. Ownership Form: Direct (D) | 7. Nature of Indirect Beneficial Ownership |
|---|---|---|---|---|---|---|---|

Exhibit 4.

| | | | Code | V | Amount | (A) or (D) | Price | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Series B Common Stock | 11/28/2003 | | A | | 5,281,739 (1) | A | (2) | 5,281,739 | I | By a limited liability company, as sole member |
| Series B Common Stock | | | | | | | | 69,178,899 | D | |
| Series B Common Stock | | | | | | | | 8,699,963 | I | By GRAT |
| Series B Common Stock | | | | | | | | 9,511,690 | I | By GRAT |
| Series B Common Stock | | | | | | | | 12,204,124 | I | By GRAT |
| Series B Common Stock | | | | | | | | 3,409,436 | I | By spouse (3) |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

Exhibit 4.

CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Explanation of Responses:**

1. Received in exchange for all outstanding stock ("TPI Stock") of TP Investment, Inc. ("TPI") in connection with the merger of TPI with and into Liberty TP Investment LLC, a wholly owned subsidiary of Liberty Media Corporation.

2. Pursuant to the agreement governing the merger, the TPI Stock was valued at $60.74 million and Liberty Media Corporation's Series B Common Stock, par value $0.01 per share, was valued at $11.50 per share, which equals 110% of the average closing sale prices of Liberty Media's Series A Common Stock, par value $0.01 per share, for the 10 trading days ended November 28, 2003.

3. The Reporting Person disclaims beneficial ownership of these securities, and this report shall not be deemed an admission that the Reporting Person is the beneficial owner of the securities for the purpose of Section 16 or for any other purpose.

| /s/ John C. Malone | 12/01/2003 |
|---|---|
| ** Signature of Reporting Person | Date |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

Exhibit 4.

**Exhibit 5**

http:DOCUMENT>
<TYPE>SC 13D/A
<SEQUENCE>1
<FILENAME>0001.txt
<DESCRIPTION>AMENDMENT NO. 4 TO SCHEDULE 13D
<TEXT>

<PAGE>

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

SCHEDULE 13D

Under the Securities Exchange Act of 1934
(Amendment No. 4)

LIBERTY SATELLITE & TECHNOLOGY, INC.

---

(Name of Issuer)

Series A Common Stock, $1.00 par value
Series B Common Stock, $1.00 par value

---

(Title of Class of Securities)

Series A Common Stock 531182103
Series B Common Stock 531182202

---

(CUSIP Numbers)

Dr. John C. Malone
c/o Liberty Media Corporation
9197 South Peoria Street, Englewood, CO 80112 (720-875-5400)

---

(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

October 27, 1997

---

(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this

schedule because of Rule 13d-1(b) (3) or (4), check the following box [_].
Note:
Six copies of this statement, including all exhibits, should be filed with the Commission. See Rule 13d-1(a) for other parties to whom copies are to be sent.

* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

-1-

<PAGE>

CUSIP No. Series A Common Stock 531182103
CUSIP No. Series B Common Stock 531182102

| | | |
|---|---|---|
| 1 | NAMES OF REPORTING PERSONS S.S OR I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS<br><br>Dr. John C. Malone | |
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | (a) [_]<br>(b) [_] |
| 3 | SEC USE ONLY | |
| 4 | SOURCE OF FUNDS | |
| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e) [_] | |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>U.S. | |

| | | |
|---|---|---|
| NUMBER OF | 7 | SOLE VOTING POWER<br><br>370,014 Shares of Series A*<br>117,300 Shares of Series B** |

CASE: O6-CV-00280-WDM-PAC MANASFI V MALONE ET AL.

| SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 8 | SHARED VOTING POWER<br>0 Shares |
|---|---|---|
| | 9 | SOLE DISPOSITIVE POWER<br>370,014 Shares of Series A*<br>117,300 Shares of Series B** |
| | 10 | SHARED DISPOSITIVE POWER<br>0 Shares |

| | |
|---|---|
| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br>370,014 Shares of Series A*<br>117,300 Shares of Series B** |
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES<br>[_]** |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)***<br>Series A Common Stock:0.6%<br>Series B Common Stock:1.5% |
| 14 | TYPE OF REPORTING PERSON<br>IN |

*Includes options for 250,000 shares, but does not include shares of Series A Common Stock issuable upon conversion of shares of Series B Common Stock.

**Includes 117,300 shares of Series B Common Stock beneficially owned by Dr. Malone's spouse; Dr. Malone disclaims any beneficial ownership of these shares.

***Each share of Series A Common Stock is entitled to one vote per share and each share of Series B Common Stock is entitled to 10 votes per share. Accordingly, when these series of stock are aggregated, the Reporting Person may
be deemed to beneficially own approximately 1.1% of the total voting power of the issuer's Common Stock.

<PAGE>

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

SCHEDULE 13D
(Amendment No. 4)

Statement of

DR. JOHN C. MALONE

Pursuant to Section 13(d) of the Securities Exchange Act of 1934

in respect of

LIBERTY SATELLITE & TECHNOLOGY, INC.
(Commission File No. 0-21317)

ITEM 1. Security and Issuer

Dr. John C. Malone hereby amends and supplements his Statement on Schedule 13D the "Statement"), with respect to the Series A Common Stock, par value $1.00 per share (the "Series A Stock"), and the Series B Common Stock, par value $1.00 per share (the "Series B Stock" and together with the Series A Stock, the "Common Stock"), of Liberty Satellite and Technology, Inc., a Delaware corporation (the "Issuer"). The principal executive offices of the Issuer are located at 7600 East Orchard Road, Suite 330 South, Englewood, Colorado 80111. Unless otherwise indicated, capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Statement.

ITEM 5. Interest in Securities of the Issuer

Paragraphs (a) and (b) of Item 5 of the Statement are hereby amended and supplemented by adding the following:

As of October 27, 2000, Dr. Malone beneficially owns (without giving effect to the conversion of Series B Stock for Series A Stock) 370,014 shares of Series A Stock, which includes options for 250,000 shares and represents 0.6% of the outstanding shares of Series A Stock. Dr. Malone's wife beneficially owns 117,300 shares of Series B Stock, which represent 1.5% of the outstanding shares of Series B Stock; Dr. Malone disclaims any beneficial ownership of these shares. The Series A Stock is entitled to one vote per share and the Series B Stock is entitled to ten votes per share. Accordingly, when these series of stock are aggregated, Dr. Malone may be deemed to beneficially own voting equity securities of the Issuer representing approximately 1.1% of the total voting power of the Common Stock.

Paragraph (c) of Item (5) of the Statement is hereby amended and supplemented by adding the following:

Dr. Malone contributed 539,831 shares of Series A Stock and 3,322,658 shares of Series B Stock to TP Investment, Inc., of which Dr. Malone is the sole shareholder. As of October 27, 2000, TP Investment, Inc. contributed all of

these shares to Liberty TP Management, Inc. in exchange for 2,390 shares of nonvoting preferred stock of Liberty TP Management, Inc. having an estimated market value of $23.9 million.

Item (5) of the Statement is hereby amended and supplemented by adding the following:

(e) As of October 27, 2000 Dr. Malone ceased to be the beneficial owner of more than five percent of any class of the Issuer's securities.

-3-

<PAGE>

SIGNATURE

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this Amendment No. 4 to the Statement is true, complete and correct.

November 6, 2000

/s/ Dr. John C. Malone
-----------------
Dr. John C. Malone

-4-

</TEXT>
</DOCUMENT>