IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00280-WDM-PAC

WASIM G. MANASFI,

Plaintiff,

v.

JOHN MALONE,
ROBERT BENNETT,
GARY HOWARD,
CARL VOGEL, and
KENNETH CARROLL,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**O. Edward Schlatter, United States Magistrate Judge**

This is a securities law/class derivative action. On February 28, 2006, Judge Miller referred this action for pretrial case management and for proposed rulings on dispositive motions. Before the Court is the Joint Motion of All Defendants to Dismiss Complaint, filed on April 20, 2006 [doc. # 9]. The motion is fully briefed and the Court has determined that oral argument would not be of material assistance.

I.

Plaintiff, who was a shareholder in Liberty Satellite & Technology ("LSAT"), filed his Amended Complaint on February 27, 2006. Prior to November 12, 2003, LSAT was a publicly traded company whose shares were traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ") National Market. Plf's Amend

Compl. at 7-9. On November 12, 2003, all the publicly trade shares of LSAT were acquired by Liberty Media Corporation ("Liberty Media"). *Id*. at 14. Liberty Media already owned a significant portion of LSAT's stock prior to that acquisition.

In this Amended Complaint, Plaintiff alleges the Defendants violated securities laws due to their failure to notify LSAT common stock shareholders of the failure to list the LSAT Class B and Class A stock to the NASDAQ National Market. Plaintiff's central claim is that Liberty Media Chairman Dr. John Malone engaged in unlawful insider trading of LSAT stock. Plaintiff refers to a October 27, 2000 transaction wherein Malone contributed all of his LSAT holdings, along with approximately $53,000,000 in cash, to Liberty TP LLC ("TP LLC") and Liberty TP Management, Inc. ("TP Management"). Plaintiff argues that, "Dr. John Malone's abrupt and sudden trade of LSAT stock that he held for over 4 years, and less than a year after the company he is Chairman of invested $300 million is questionable since it occurred during waiting for rule by the NASDAQ on listing application by LSAT, which failed." Plf's Amend Compl. at 2. Plaintiff further alleges that the other named defendants facilitated this insider trading.

II.

As a threshold matter, in their Joint Motion to Dismiss, the Defendants argue that the Plaintiff's claims against them must be dismissed for lack of standing because the Amended Complaint fails to allege that Plaintiff or any member of the alleged class purchased LSAT shares at any particular time. However, this deficiency was addressed, and cured, in Plaintiff's Response to Defendant's Motion to Dismiss,

wherein Plaintiff attached a copy of his Charles Schwab Form 1099 Account Summaries reflecting his LSAT stock purchases during the relevant time period. Plf's Resp. to Def. MTD, Ex. 9. Plaintiff has thus established standing in this matter. With regard to Plaintiff's claims, the Defendants argue *inter alia* that: (1) Plaintiff's allegations are barred by the applicable statute of limitations; (2) Plaintiff's Amended Complaint fails to comply with Fed.R.Civ. 9(b); and (3) Plaintiff's action fails to satisfy the requirements for class action certification. Each of these three primary arguments are addressed in turn.

III.

Prior to July 28, 2002, a one year statute of limitations was applicable to claims under § 10(b). Section 804 of the Sarbanes-Oxley Act extended the applicable statute of limitations for any "private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" to the earlier of two years following notice or five years after the occurrence of the facts giving rise to the claim. 28 U.S.C. § 1658 (2004). Section 1658 applies to private rights of action involving claims of fraud, deceit, manipulation, or contrivance. In the context of securities fraud, the Tenth Circuit has held that the statute of limitations begins to run "once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud." *Sterlin v. Biomune Systems*, 154 F.3d 1191, 1201 (1998). The standard outlined in *Sterlin* and similar cases is viewed often as a two-step process: (1) the date when the plaintiff was on "inquiry notice" of the possibility of fraud; when there existed "sufficient storm

warnings" to alert a reasonable person to the possibility that misleading statements or significant omissions had been made; and (2) the period thereafter during which a diligent investor should have discovered the facts underlying the alleged fraud. *Id*. at 1202-05.

In this case, Plaintiff allegations center on what he refers to as the delayed February 21, 2001 public press release of the notification of failure and withdrawal of LSAT listing application to the NASDAQ National Market. He asserts that this delay resulted in financial loss to him, and other LSAT common shareholders. Plf's Resp. to MTD at 12. Plaintiff contends that he did not discover the violation until the fall of 2005. Afterwards, Plaintiff asserts that he reviewed the filings to discover violations, and then filed his Amended Complaint. *Id*. at 55-56.

Upon a review of the record, the Court finds that Plaintiff's claims are time barred. Plaintiff's Response supports a determination that Plaintiff apparently knew of the February 21, 2001 public press release in question and had concerns about LSAT, but he waited almost five years to file his Amended Complaint. To begin, Plaintiff explains in his Amended Complaint that LSAT shareholders, including himself, discovered that LSAT Class B did not meet the minimum NASDAQ listing requirements, as relayed through the February 21, 2001 LSAT Press Release. Plf's Amend Compl. at 10. But even before Plaintiff learned of this, he and other members at his investment club were tracking the progress of the listing application. Plaintiff states that:

> During the 6 months of waiting on the results of the LSAT NASDAQ National Market listing application, my friends at our investment club made several phone calls to the LSAT Investor Relations, inquiring about the delay to the NASDAQ

> listing. We were told that it was in the process, and no details were available to the public. *Id*. at 12.

Next, Plaintiff asserts that beginning on October 27, 2000, Defendants released limited portions over a four-year period in order to deceive shareholders. Plf's Resp. to Def. MTD at 57-58. Plaintiff further argues that, "None of the bits and pieces of the filings gives LSAT shareholders the complete picture of the charges presented in this Amended Complaint." *Id*. He also insists that, "Only after review of the entire filings for years 2003 to 2000 in reverse can a person realize the violations." *Id*. at 55. Taken together, these are sufficient facts to put a reasonable investor on notice of the possibility that misleading statements or significant omissions had been made. *Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1437 (10th Cir.1991), *amended on reh'g*, 947 F.2d 897 (10th Cir. 1991), *vacated sub nom. Dennler v. Trippet*, 503 U.S. 978 (1992).

Given Plaintiff's knowledge of the press release alerting him of the Defendant's actions that gave rise to this litigation, and the other letters and documents that Plaintiff attaches to his Response as exhibits, a diligent investor should have discovered the facts underlying the alleged fraud during this time period of almost five years. With this in mind, he had until February 21, 2003 (two years after the press release publication), at the latest, in which to file his Amended Complaint before the statute of limitations expired. However, the Amended Complaint was not filed until February 17, 2006, well outside the applicable two year period statute of limitations for claims based on the alleged transactions. But as discussed below, even if Plaintiff's claims were not barred by the statute of limitations, the Amended Complaint would be dismissed for failing to

comply with Fed.R.Civ.9(b), and failing to satisfy the requirements for class action certification.

IV.

Defendants also move to dismiss under Fed.R.Civ. 9(b), which dictates that "averments of fraud be stated with particularly." *Grossman v. Novell, Inc*.,120 F.3d 1112, 1125 (10th Cir.1997). *See also* Fed.R.Civ. 9(b)("In all averments of fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition or mind of a person may be averred generally.") Fed.R.Civ. 9(b), the Court of Appeals for the Tenth Circuit in *Grossman* held that a "plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Grossman*,120 F.3d at 1124. "Mere conclusory allegations of falsity are insufficient." *Id*. It is not a "license to base claims of fraud on speculation and conclusory allegations." *United States v. Coastal Healthcare Group, Inc*., No. 99-3105, 2000 WL 1595976, at *3 (10th Cir. Oct. 26, 2000). The purpose of 9(b) is to afford a defendant fair notice of any fraud claims and the factual background upon which those claims are based. *Kock v. Koch Indust., Inc*., 203 F.3d 1202, 1236 (10th Cir.), *cert. denied* 531 U.S. 926 (2000).

Here, Plaintiff's prolix Amendment Complaint only sets forth conclusory allegations that, "Dr. John Malone's abrupt and sudden trade of LSAT stock that he held for over 4 years, and less than a year after the company he is Chairman of invested $300 million is questionable since it occurred during waiting for rule by the

NASDAQ on listing application by LSAT, which failed," and that Dr. John Malone's Securities and Exchange filings were "incomplete, inaccurate, and largely inconsistent with the SEC filing by Liberty Media in regards to this trade." Plfs. Amend Compl. at 2,19. Notably, absent from these allegation is the required explanation about why Dr. Malone's SEC filings were false or misleading. After considering the Amended Complaint in its entirety, and absent evidence showing otherwise, the Court finds that the Amended Complaint does not sufficiently identify the misleading statements or omitted material facts forming the basis for Plaintiff's claims, and therefore, it fails to satisfy the pleading requirements of Rule 9(b).

V.

Plaintiff further states in his Amended Complaint that "I bring this case on my, and all LSAT shareholders of record at time of LSAT sale, behalf against the named defendants for facilitating Dr. Malone's insider trades." Plf's Amend Compl. at 3. The Court construes Plaintiff's statement to mean that he is bringing forth a class action claim against Defendants. As such, Plaintiff must first seek certification under Rule 23(b)(3) which requires a showing that the questions of law and fact common to the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy (superiority).

The party invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class action procedure have been satisfied. *Cook v. Rockwell Int'l Corp*., 151 F.R.D. 378, 381 (D. Colo.1993). In order for this action to be

maintained as a class action, Plaintiffs must first establish that the following requirements of Fed.R.Civ.P 23(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims of defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These requirements are often referred to as numerosity, commonality, typicality, and adequacy of representation.

a. Numerosity

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." To satisfy the requirements of Rule 23(a), Plaintiffs must first adequately define the class and then establish that it is so numerous that joinder of all members is impracticable. *Cook*, 151 F.R.D. at 382. Here, Plaintiff has not adequately defined the class. Also, Plaintiff's single statement that he is bringing this suit on behalf of "all LSAT shareholders" alone, without any specific details, is insufficient to show that joinder is impracticable. Therefore, the Court finds that Plaintiff cannot satisfy the required numerosity requirement.

b. Commonality

Rule 23(a)(2) provides that a class may be maintained only if "there are questions of law or fact common to the class." This does not require that all the questions of law or fact raised by the dispute be common; nor does it establish any quantitative or qualitative test of commonality. *Cook,* 151 F.R.D. at 385. The claims of the class members need not be identical for there to be commonality; either common

questions of law or fact will suffice. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982), *cert. denied*, 460 U.S. 1069 (1983). Nor need the injuries complained of be identical among the class members and the class representative; only the harm complained of must be common to the class. *Penn. v. San Juan Hosp*., Inc., 528 F.2d 1181, 1189 (10th Cir.1975). In this case, Plaintiff fails to demonstrate that there is a common nucleus of facts arising from the Defendant's alleged actions. The Amended Complaint lacks a showing of questions of law and fact alleged in the Amended Complaint which are common to all members of the class. Accordingly, the Court cannot determine whether the claims concerning the insider trading allegations involve a common scheme affecting the entire class and form a common nucleus of operative facts that fulfills the commonality requirement of Rule 23(a)(2).

c. Typicality

A class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which united the class, the typicality requirement is satisfied. *Cook*, 151 F.R.D. at 385. The Defendants raise the issue that Plaintiff lacks standing to maintain his insider trading action because he does not allege that he traded contemporaneously with Malone's contribution of his LSAT stock to TP Management. Without additional facts, the Court cannot conclude that Plaintiff's claims arise out of the same alleged course of conduct and are based on the same theories as those of the absent class members. Thus, the Court does not find that the interests of

the Plaintiff coextensive with and typical of all class members and that he satisfies the typicality requirement.

d. Adequacy of Representation

The Court may certify a class if "the representative parties will fairly and adequately protect the interest of the class," Rule 23(a)(4). Adequate representation is a factual inquiry dependent on the circumstances of the case. "A finding of adequacy [or representation] includes the findings that the plaintiffs are knowledgeable as to the status and underlying legal basis of the action, that they are willing and able to pay notification and other cost, they will diligently pursue their claims, and that their interests are not antagonistic to the interests of the class." *In re Storage Tech. Corp. Securities Litigation*, 113 F.R.D. 113, 118 (D.Colo.1986).

Furthermore, Defendants argue that because Plaintiff is not an attorney, he lacks the capacity on behalf of the class he purports to represent. Defendants contend that since Plaintiff is not represented by a lawyer who would represent any class certified, his representation of a class is inadequate as a matter of law. Defendants are correct. Under Rule 23(a)(2), an attorney must be appointed to serve as class counsel who fairly and adequately represent the interests of the class. Moreover, the records does not show whether Plaintiff understands the essence of this case, the nature of a class action, his role as class representative, and his obligation to be responsible for his *pro rata* share of the costs. Therefore, given Plaintiff's inability to satisfy the four requirements of Fed.R.Civ.P. 23(a), this action cannot be certified as a class action.

Based on the above significant infirmities in Plaintiff's Amended Complaint, and

in the interests of judicial economy, the Court finds it unnecessary to address the remaining grounds for dismissal offered in the Joint Motion of All Defendants to Dismiss Complaint. To sum up, Plaintiff's Amended Complaint: (1) is barred by the statute of limitations; (2) fails to comply with Fed.R.Civ. 9(b) because its allegations are not stated with sufficient particularity; and (3) fails to satisfy the requirements for class action certification. Therefore, the Joint Motion of All Defendants to Dismiss Complaint should be granted and this action must be dismissed.

VI.

For the reasons set forth above, it is

**RECOMMENDED** that the Joint Motion of All Defendants to Dismiss Complaint, filed on April 20, 2006 [doc. # 9] be **GRANTED**.

**FURTHER ORDERED** that Plaintiff's Motion for Advice and Direction, filed on April 21, 2006 [doc. #15] shall be **DENIED** as moot based on the above recommendation.

**FURTHER ORDERED** that Plaintiff's Motion for Extension of Time, filed on April 21, 2006 [doc. #16] shall be **DENIED** as moot based on the above recommendation.

**FURTHER ORDERED** that Defendants' Joint Motion to Strike Surrebuttal, filed on June 15, 2006 [doc. #30] shall be **DENIED** as moot based on the above recommendation.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States**

**District Court for the District of Colorado. The district court judge shall make a determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated: February 21, 2007.

BY THE COURT:

s/ O, Edward Schlatter
O. EDWARD SCHLATTER
United States Magistrate Judge